As you can see, it's been reconstituted as required by the procedures. I might just comment that our standard operating procedure here at the court is where there's a recusal, the substitute judge, like the panel members generally, is selected randomly by a computer program, so as chief judge, I didn't have any say in being on this panel. I'm just the guy whose name came up to be the substitute judge. I'm pleased to serve in that capacity, so we'd like to hear the argument now in Technical Furniture v. CBT. Mr. Conwell, good morning to you. Please proceed. Thank you, Your Honor, and good afternoon. This case is about correction of inventorship on two issued patents, an 890 patent, which is a workstation with a rotating lid, and a 084. In the interest of time, if I may interrupt, you should probably assume that we've got the issues and the background and the facts pretty well in mind, because we've read the briefs and we've covered it in considerable detail, we've read the opinion below, and it looks to me like the central issue here is whether the trial judge at the end of a three-day bench trial clearly erred in critical findings based on the totality of the evidence presented by both sides, so perhaps you can address that. The first issue I want to address is the corroboration argument. Without corroboration, Jeffrey— Even if we assume that corroboration is required, even in the case of named inventors, the trial judge found that ample corroboration, his word, ample, was present in the record. So in order to win, it seems to me you have to persuade the panel that the trial judge clearly erred in critical fact findings. Yes, Your Honor, that was an alternative argument that the trial judge made. It was an alternative decision. That was entirely 100 percent based on the declaration, the power of attorney that was signed. That declaration was signed over a year after or about a year after the application, long after even the—long after the provisional, long after the application was signed, so it's non-contemporaneous. The declaration itself does not state any—it does not provide any actual corroboration. The declaration itself says that Peter Stengel and Peter Stengel alone is the original, first, and sole inventor if only one name is listed. Could you deal with the finding of fact by the trial judge that appears at A9, page 9 of the Rule 52A, Findings of Fact and Conclusions of Law, where the trial judge says, starting at the bottom of 8 and the top few lines of 9, the conclusion that Stengel, Korber, and Babcock, but not White, were co-inventors of the 890 patent is not solely based upon the testimony of Korber and Babcock, but is amply supported by other evidence, for example. And then he goes through the declaration of Stengel, and then he refers to other documents. For example, he says in the sixth or seventh line that the, quote, application for the 890 patent in which Korber and Babcock were identified as co-inventors. So it seems to me that he's referring to the document at A4330, which is the application itself, page 1 of which lists all three men by name. So I'm having trouble figuring out why you think that the district judge would have clearly erred in saying that there was corroboration on the face of the application itself, a separate document, to support the findings that the judge made based on the declaration of Stengel. Yes, the actual testimony from the patent agent, patent attorney who filed this application and the testimony of all the parties showed that the definition of inventorship. What I'm asking you is why page 1 of the application that appears at 4330 isn't truly strong corroboration for the findings in this paragraph of the judge's opinion. Because when Peter Stengel signed that application, he was signing about himself, that he is an inventor. No, but the application shows the other two inventors being named. As I understand the declaration, Stengel says in the declaration, I read the application. So putting two and two together, he saw the names Korber and Babcock. It doesn't say that he read the application, Your Honor. It says that he read the specification. The specification is not the same as the application. What Stengel did here and what happened, the patent attorney faxed over the power of attorney, and he had a discussion with the patent attorney about that he was assured that this power of attorney was not assigning his rights away. And as soon as that was cleared, then he signed the power of attorney. He did not. You're saying then that the trial judge is wrong in saying that the application included the names of Korber and Babcock. I'm saying that the power of attorney that he signed and all the evidence that was presented before the trial judge showed that only the declaration was reviewed and the declaration specifies the specification, not the application. The actual wording of the declaration uses the word specification, not the application. So you want us to accept the idea that when Stengel picked up the application, he didn't read page one, and he started at page two because under your definition, that's where the specification begins? Yes, and not only that, but the key part of this decision is the silence argument. That argument is that Peter Stengel at some point might have learned the argument, might have learned the inventorship, and whether he had some duty to come forward and challenge whatever was filed in this case. Where do you see the judge depending critically on silence? Yes, line six. Stengel raised no objection to having Korber included as a co-inventor. In this particular case, Stengel himself was referring to himself as an inventor. He was not opining on the full inventorship of who was on the panel. Well, that's your interpretation of the declaration, but it doesn't seem to me it's necessarily the only reasonable interpretation of the declaration's wording, and the trial judge interpreted it otherwise. So it seems to me it comes right back to the issue of do we have to conclude that that finding was clearly erroneous? Well, under that analysis, no named inventor, assuming they always sign the declaration, no named inventor could ever challenge inventorship. Why? Because every one of them signs some sort of declaration saying that the inventorship named in this application might be correct. However, this is a case where that is a non-contemporaneous document. There's no evidence at all that inventorship and what constituted inventorship was described. In fact, the actual testimony was that Peter Stengel thought and was told that business contributions entitled someone to be named as an inventor. That was what the testimony showed. That was the only testimony that discussed that aspect. The actual patent agent did not state that he ever stated what the definition of inventorship was. Their single and only conversation on any of this was that the patent attorney affirmed that this power of attorney did not act as an assignment. Remind me, did the patent attorney, testimony, right? Yes. Did he explain the circumstances under which the application was prepared and how he came to put all three names on? I don't recall what his testimony was to that effect. He worked with Jeffrey Korber. Jeffrey Korber was the business manager. He worked with Jeffrey Korber on this. Peter Stengel was always the first and primary inventor. Because he was working with Jeffrey Korber, he put Jeffrey Korber's name on the provisional patent application that was filed in December of 2002. The only two names on that provisional patent application were Jeffrey Korber and Peter Stengel. Then, later on, there was a discussion that happened via email on whether Babcock, and this was between the patent attorney and Jeffrey Korber, on whether Babcock should be added to the inventorship. At the time, Babcock was working in drafting the claims along with the patent attorney. That was actually one of the things that he was hired to do, was to help the patent attorney draft the claims. The patent attorney came back and said Babcock should be on the patent because he contributed to the dampener. That's the evidence that was presented at that particular time. Was there testimony to the effect that that was explained to Mr. Stengel? There was testimony that that was not explained to Peter Stengel. When you said he said that Babcock should be included, he said that to whom? He said that to Jeffrey Korber via email. That is why Babcock was added as inventor. In fact, the trial judge actually recognizes part of that. He says Stengel initially objected to including Babcock as co-inventor. Actually, it was Jeffrey Korber who had objected to having Babcock, and the communication from the patent attorney to Jeffrey Korber. So you say that Stengel never did have occasion to object. That's right. Because he was unaware. Yes. The evidence in the email was that the patent attorney is communicating to Jeffrey Korber that Babcock needs to be on the patent. Because Babcock actually didn't ask. He made a statement, Babcock shouldn't be on this patent. And it's the patent attorney who's communicating back to Jeffrey Korber, stating Babcock is on here because he contributed to the dampener. And this is the patent attorney who's working with Babcock at the time. Actually, the patent attorney's working with Babcock. Babcock was hired not only to do some engineering work, but actually the majority of his work was that he was working sort of as a subcontractor, getting paid to help the patent attorney draft the claims. So Babcock was the principal contact among the inventors with the patent attorney, not Korber? I thought it was Korber. Yes. But nobody communicated with Jeffrey Korber except the one time the patent attorney communicated with him with regard to the power of attorney. You said nobody communicated with Jeffrey Korber. You mean Stengel. I'm sorry. I misspoke. Yes. Nobody communicated with Peter Stengel with the exception of the power of attorney. Nobody ever communicated with Thomas White ever. And as far as the communications between Babcock, Korber, and the patent attorney, I think we can assume there were many communications between the three of those parties. Why would the patent attorney have had occasion to communicate with Mr. White? Well, one aspect is asking Peter Stengel going through the claims of the invention and asking who was involved in the invention. But I thought that your position with respect to Stengel was that he was saying that he's the sole inventor. That's true. He didn't mention Mr. White. Right. And there was no – that's true. He did not mention White, but also he did not understand what it meant to be an inventor and who would be contributing. It was only following this that when Peter Stengel was given the definition of what inventorship is that he realized who needed to be on it. In other words, it was prior to October 1st, September 30th, in 2002, all the work that was done was Peter Stengel had done the initial concepts and drawings and come up with the idea. And then he worked with Thomas White in getting the features down and ensuring that the model was working and that it accurately represented what their invention was. One of the features was the dampener that they had worked on at that time. That was one of the key things that Thomas White had helped work on. So to the extent that the dampener at all was at issue, which during the trial that was one of the key issues, the fact was that the only independent witness in this case, Russell, who was working for GT Brothers and at the time of the trial was not working for GT Brothers and was not connected in any way with the case, Russell testified all the work that both Peter Stengel and Thomas White did in this pre-September 30th, 2002 time frame. Well, maybe I'm wrong about this, but you correct me if my assumption is wrong. Are we talking here about a dispute which has the effect, if resolved in favor of your opposing side, has the effect of making this patent unenforceable? Or are we talking about a dispute as to who gets how much of any royalties coming out of the patent? It would be both, Your Honor. In other words, if we were to sue anybody for enforcement of this, any third party, any third party, especially with the documents in the record now, would state that it has incorrect inventorship and therefore it's invalid. And also, at the present time, there's no express infringement claim. It was solely to correct inventorship, but that certainly is a possibility at some future time. Who would the defendants be? Who would the defendants be? If we corrected the inventorship? Yeah. Well, that wasn't a claim that was, that was not a claim that was made in the case. I understand that, but I'm looking into the future. I'm asking you to help me speculate about the future so I can understand the practical downstream consequences if we rule in your favor. I mean, frequently in these situations, what happens is one inventor who doesn't want somebody else to be on the patent, the reason they don't want that person to be on the patent is that's their competitor. And therefore, their competitor, of course, is not going to allow the patent to be enforced against him. Right. I'm just asking if, and I think this is the same question the Chief Judge has, is that this situation, the reason it's of concern is because I'm sort of wondering how important White and Babcock are to the resolution of the central dispute in this case. Isn't the central dispute in this case whether Mr. Korber stays on? Well, except that Babcock assigned his rights to CBT supplies. Well, that sounds like it's a lot like my hypothetical. The hypothetical is are they competitors? Yes, they're competitors. So TFG and CBT supply are competitors. CBT supply owns the rights of both Korber and Babcock. So if they lose the rights of Babcock, they lose nothing because they already have him through Korber. That's correct. So Babcock is irrelevant to anything other than whether everybody else gets a one-fourth share or a one-third share of any royalties. Well, except that the trial judge did hold that Babcock was an inventor and corroborated Korber's claims. Well, he can't corroborate any claim prior to September 30, 2002. He wasn't involved in any way. And I didn't mention that. That was one of the findings of the trial judge for the ample corroboration argument is that it's corroborated by Babcock. But that did not rise until much later. Well, to the extent that this fight is really about whether Korber gets kicked off the patent, how do you attack the findings of the trial judge at page 11 of the opinion where he says, quote, in about the fifth line down, it was Korber who had the initial hatch idea that Korber presented this to Stengel, and the two of them collaborated to develop the basic concept. Moreover, the court finds the evidence to establish Korber's frequent product-related discussions with Stengel and Korber's active participation in product development, et cetera. The whole paragraph makes findings that Korber was front and center in the development of this thing from A to Z. So, of course, he should be one of the named inventors. But how do you show that those findings are clearly erroneous? Well, unfortunately, we have the problem here, Your Honor, that Peter Stengel is deceased, and he was not able to state how that is. What in the record can you rely on to show that these findings that I just read have to be viewed as clearly erroneous? There's two. One is this is entirely 100 percent uncorroborated. This exact statement is nowhere in any record, no e-mail, no written form, no anything. This statement was entirely the product of a four years later, after three years of litigation statement. That's number one. You're talking about Korber's testimony? Yes. Yes, Your Honor. Well, of course Korber's testimony could have been rejected as false or manufactured or exaggerated or all sorts of other things. But the trier of fact here is the trial judge at a bench trial. The assessor of credibility is the trial judge. The trial judge chose to find Korber's testimony believable. So it seemed to me in order to prevail, you have to point out something to us in the record that is so powerful that the trial judge couldn't possibly have believed Korber, had to reject Korber as a liar. If it's there, just show us where it is. Well, I believe that in our case we do have to rely on the fact that this is entirely uncorroborated. Every particular case says that in these cases there are extensive records. But on the corroboration, and this is a pure question of law, I think, is whether corroboration is required to support an inventorship contention on the part of someone who is a named inventor and therefore is entitled to the presumption of inventorship. I didn't see any cases, you alluded to American cyanamide and the Thompson case, I believe, as standing for this, but I didn't see either of those cases as supporting the contention that corroboration is needed in the case of a named inventor. Thompson actually was the case of a named inventor trying to exclude the other named inventor. It's as close as you get in this particular case. And in Thompson, the court actually said there was no corroboration for either party. Each named inventor was pointing the finger saying, he's not on it. Right, but there's no corroboration. In other words, that in order to show that you shouldn't be on it, I, regardless of whether I'm on the patent or not, I have to have corroborated testimony to knock you off. That's different from saying that in order to maintain my position on the patent, I have to have corroboration for my testimony, correct? That's correct. And we don't have that. Thompson's is close because you have a named inventor. However, in most cases, you don't have any. With respect to the named inventor's effort to try to get somebody else off, which is the issue that the court was talking about in Thompson, as I read it, there you do need corroboration. But here, Korber is not trying to get anybody off. Korber is trying to keep himself on. And as to that right of keeping himself on, I don't see any case that suggests that corroboration of testimony is required. Is there one? No. And I do believe that the standard is slightly different and should be from a public policy standpoint from a named inventor stating what needs to be done to change the inventorship. There is one other aspect to this, and that is that entire finding does not state that anything is inventive in nature. In fact, a boat hatch works exactly different than this particular invention. This particular invention is a rotating lid. It is not a boat hatch. A boat hatch would mean, and most times this workstation is in a desk, a boat hatch would mean that it's a pop-up monitor. That's what a boat hatch would be. This is not. This is a flat-screen monitor that's mounted on the underside of a lid, and it rotates up into the position, and it's also, it's not above the desk. It's actually displaced into the desk. That's what made this inventive in nature. There were other patents that were so-called like the boat hatch. This invention is not a boat hatch. So our alternative- The trial judge doesn't call it a boat hatch. He calls it a hatch repeatedly, but not a boat hatch. Yes. How boat hatches work, it's not clear to me why that's germane here. Well, boat hatch because the specific testimony from Jeffrey Korber used the word boat hatch. And I believe in the defendant's trial brief that they cite it, and in our trial brief, we cite it. That's what the actual testimony said. It was that Korber got the idea of a boat hatch and mentioned it to Peter Stengel. That was the extent. That's the only specific statement that Korber ever made, and, of course, he made it four or five years later in the context of this litigation. All right. Well, we've given you a lot of extra time to try to make sure we understand all of your arguments and what you're relying on. Let's hear from the other side now, and we'll give you back some rebuttal time. Thank you, Your Honor. Thank you. Ms. Miller, good morning, good afternoon, rather. Welcome to the court. Please help us out if you can. Good afternoon. May it please the Court. My name is Erin Miller, and along with my colleague Stephen Tiller, we represent the appellees in this matter. Your Honor is absolutely right. In order to overturn this decision, the appellants need to show that the judge made clearly erroneous decisions of fact, and they have provided absolutely nothing from the record to support that the judge made any erroneous findings of fact. Unless the judge made a legal error. Unless the judge made a legal error. How about the problem, well, I don't know if it's a problem or not, but the issue of the extent to which the judge focused on the embodiment as opposed to the claims. First of all, how would you articulate the right standard for assessing inventorship, taking an example of claims that are fairly general, but a specification that includes three very specific embodiments. Is it enough to have invented, let's say, two of the three embodiments, if you can't find some feature of the embodiment that you actually contributed in the claims explicitly? Respectfully, Your Honor, I don't believe that's what we have here. I understand, but I'm looking for a general statement of the legal principle that applies here, and then we can move on to this case. As to when, I'm just going to make sure I understand your question. Well, my question was not very clear. Let me see if I can make it clearer. Suppose you have a broad claim that doesn't call out particular features of the embodiments in the specification, but you have one of the named inventors has contributed some of those specific features of the embodiment, of, let's say, one of the embodiments. Is that enough to be an inventor, or do you have to be able to point to some specific thing in the claim that that inventor contributed? Certainly, Your Honor, you look to the claims to determine whether someone is an inventor, and if you have general terms in those claims, it is appropriate to read such claims in light of the specification. And with respect to the slotted bracket, that's exactly what the court did here. So the patentee is its own lexicographer. Okay, let me try to be clearer because I'm not succeeding. Suppose that you've got a claim that says a bracket, and there are two brackets, just by example. One is a slotted bracket, and the other is an unslotted bracket. All the claim says is a bracket. And the embodiments contain several different types of brackets, one of which I invented, the other of which Judge Michel invented. Now, if we're both on the patent, do I get to be an inventor under those circumstances when I haven't invented the particular thing that's called out? All I've invented is one embodiment of it. I believe in that situation that the answer to your question is yes, that person would be able to be an inventor because the claim specifies a bracket. But not the particular bracket that I invented. Right, but you still invented a bracket, so it would fall within the scope of the claims. The preferred embodiment usually falls within the scope of the claims of the patent. That's what it's supposed to do. So if you invented a specific type or you conceived of a specific type of bracket and claimed more broadly that it could encompass other types of brackets, you are indeed an inventor having come up with the conception for that particular bracket. Here, when we looked at the slotted bracket, for example, the TFG argued that that's an unclaimed element. That's not true. Here, the court was reading that claim in light of the specification, and the claim that is at issue is at least claim two, where the claim talks about bringing the mechanism to a gentle stop. The only structure identified anywhere in the patent to accomplish that is the slotted bracket, and the specification goes into quite some detail about how the slotted bracket accomplishes that function. In addition, there was ample testimony at trial from Mr. Babcock about how all the options that he looked at for accomplishing a gentle stop at closure, and that was the way that he formulated in order to accomplish that function. And both sides testified that that function was imperative to this invention because it would slam people's fingers. If it didn't come to a gentle stop, you could damage the equipment that was attached to it. So the methodology, then, I take it from your answer would be to look – for example, I think functionality is a good example of a general claim language that then may be carried into the specific embodiments. If you had something that you contributed to the patent that contributed to one of the claimed functions in any way, that would be sufficient to make you an inventor? If you contributed something that – That contributed in any way and to any degree to one of the functions. If that's how it's defined within the specification, then yes. Because if there is no structure to that term in the claim, it's appropriate to look to the specification to determine – to read the patent in light of the specification, which this court has found on numerous occasions is appropriate to do. So if you – because you only have to claim – in order to be an inventor, you only have to contribute part of a claim – of one claim of the invention in order to be named. You don't have to come up with the entire invention. That's what joint inventorship is. So in your hypothetical, someone who contributed to a portion of a claim would be entitled to be named as an inventor on that claim. I'm having a hard time – given the way you're analyzing this question, I'm not suggesting it's wrong, but I'm having a hard time imagining a case in which anybody contributes to a preferred embodiment would not – or any embodiment that's listed in the specification would not thereby become an inventor. If you contribute to a portion of the preferred embodiment that is included within the claim – one which expresses the function of the entire device – it's hard to see where you would say that somebody contributed to the device. I mean, I suppose you could divide the device into different segments and say that the claim is really only to one segment of the device. But it's – we talk about looking to the claim only, but I'm wondering whether we're not really saying you look at the specification in order to flesh out the claim with respect even to the question of inventorship. Respectfully, Your Honor, I think you do always need to look at the specifications when interpreting the claims. In order to interpret a claim – because you could define it as the patentee, you could define it as anything. You could define a fork as a spoon if you wanted to in the specification, and that would change the ordinary meaning of the word. So I don't think you can ever divorce the specification from claim interpretation. Another point raised by Your Honor was whether or not a named inventor needs to have corroboration. And this Court is absolutely correct in that there is no case law that provides that a named inventor needs to corroborate its own testimony. What about the fact that in this particular case the supposed contrary witness is dead, and therefore you can't get his current recollection of all of his conversations with Korber and other evolutionary facts? Is there any basis for saying in that kind of circumstance an exception should be made to the general rule that named inventors don't have to have corroboration? I don't think that you could create an across-the-board exception for where the other party, the alleged inventor, or in this case he was actually another named inventor, has passed away. That would mean that any time one of the inventors on the patent has passed away or an alleged inventor has passed away, the named inventor would then have to have a huge burden of presenting – Maybe it's a huge burden. Maybe it's not a huge burden. It might vary quite a bit from one circumstance to another. But what would be wrong with such a rule in order to try to get at the truth-finding function of litigation? Well, it's unfair to the named inventor in the sense that simply they're entitled to a presumption. Under black-letter law, they're entitled to a presumption that they're the true named inventor. I'm saying maybe not in this circumstance. Generally, of course, the case law is clear. But maybe in special circumstances there should be declared to be an exception to the general presumption that named inventors don't need to provide any corroboration. Respectfully, I disagree with that position because that would open a huge hole in the case law where any time another inventor passed away that your patent could be invalidated. And there's a presumption exactly to protect patentees from having their inventions invalidated on the basis of uncorroborated testimony. The reason for the burden is to protect the patentee, not to protect some alleged inventor. And here, in this particular case, we provided ample corroboration for Mr. Korber's testimony and the court still found. But in this case, to oversimplify it a little bit, we're not really fighting over whether white or anybody else should be added. The real important part of the game, as I perceive it at least, is to try to kick Korber off so that Korber or his company can become a defendant in a later infringement suit. So in the circumstance where what I'll call the main inventor, Stengel, is now dead, and the real point of the correction dispute is not so much to add somebody, it's to kick somebody off who is a named inventor so that he can become a defendant. Maybe if you have the combination of those two circumstances, maybe corroboration should be required. I think that across-the-board sort of exception would create havoc in the law, where a named inventor could file suit against them for correction of inventorship, and then simply because someone passes away that they would be required to sustain a different burden than anyone else named on a patent. And that seems to me to be fundamentally unfair. Normally I would think that if you had a case, multiple inventors, and let's just say the perhaps paradigmatic case is three people walk into the lawyer's office arm-in-arm and they say, We're the three inventors on this patent and we want you to prepare an application for us with all three of us named. We all agree that we have contributed significantly in each instance to the patent. And it's going to be, you would think, ought to be really hard for one of them later to have a change of heart and say, You know what? I really did the whole thing now that I've discovered that it's actually worth something. So, okay, we'll accept that category of cases. But it seems to me fairly clear that on this record that that's not what happened. And there's a danger, it seems to me, lurking out there, and I want your comment on this if you would, that one person will go into the lawyer and say, You know what? I invented this and so-and-so also contributed. And that the person who contributed never gets the full picture of what's going on. I mean, American Cyana, frankly, was a case. It was actually worse than that because, well, you know the facts of American Cyana. But what do we do to police those kinds of cases? Is it all on the lawyer? Is it something that the lawyer is in danger of malpractice if the lawyer does not fully inform each of the parties as to the consequence of filing a joint application? Or should we take just a generally more jaundiced view of the situation in which someone has walked in and taken the lead and others may not have been fully informed as to exactly how the patent is going to be drafted? I think the case law already protects against that situation in a couple of ways. First of all, named inventors have a duty of candor to the patent office. And so they have to, in a perfect world, they have to only make truthful statements. Second of all, the named inventors have to sign declarations stating that they've read the application and that the others are also properly named on the application. And third, if they do say, you know, I was an inventor on this application and a patent issues and later there's a challenge to it, it could be deemed invalid. So that protects against the very concern that you're discussing because they risk invalidation if they do that. But how about the fact that in this case, one reading of the declaration of Stengel is that he's claiming to be the sole inventor because there's some language in there about the co-inventors are those listed and signing below. But then when you look at the end of the document, Korber and Babcock aren't listed and didn't sign. So if you kind of take very literally that introductory language by Stengel, the conclusion you would have to draw is that I, Stengel, am saying I'm the sole inventor and there isn't any other inventor and therefore Babcock and Korber or anybody else aren't inventors. What about that circumstance? Should that change how we approach the case? I understand your concern. And here it was simply a mistake that other people weren't listed on the patent. But the declaration also provides that the person's read the application and there is strong evidence. Well, you heard the argument. The actual wording was read the specification and arguments being made is that page one that listed by name very clearly all three inventors isn't part of the specification even though it is part of the application and that therefore Stengel didn't read page one, didn't realize that Korber and Babcock were being listed as co-inventors. What about that interpretation? My first response to that is that Peter Stengel was not available to testify as to whether or not he knew anyone else was on the application. So we don't have an affirmative statement from him saying I didn't know. Second of all, there's strong evidence that he would have known in this case that the other two inventors were named. First of all, the header on every single page of this application says application of Korber et al., including the page that has the specification. So he could maybe complain he wasn't so sure about Babcock, but it's so hard for him to say I read the specification but I didn't realize that Korber was being listed as a co-inventor because every page has Korber's name. Indeed. And also there's other facts that support that Mr. Stengel knew, that both Mr. Korber and Mr. Babcock were listed on this application. First of all, Mr. Royal W. Craig, who was the prosecuting attorney, stated that he had a conversation with Mr. Stengel prior to him signing the declaration, in which he explained to Mr. Stengel that he should read the entire application prior to signing the declaration, which would include page one, which does affirmatively list all three inventors. So the attorney used the word application, not specification, even though Stengel's declaration uses the word specification where it might have meant application. That's correct, Your Honor, and there is testimony to that effect from the attorney. Second of all, Mr. Stengel repeatedly acknowledged that he shared that patent with Mr. Korber in a series of e-mails, one of which is from prior to him signing the declaration. And, in fact, some of those e-mails date all the way to August of 2005. They're all in the record. They're all in the record. I can point to the citations if you need me to. They're cited, too, in our papers. That's an impressive threat. We have all too few attorneys who are prepared to cite to specific pages in the record, so good for you. I actually can if you want me to. I don't doubt it. And the biggest thing that I think was misstated during Appellant's argument is that Mr. Craig actually sent an e-mail, not only to Mr. Korber but also to Mr. Stengel stating why Mr. Babcock needed to be named as an inventor. He talked about the damping mechanism. So in response to Judge Bryson's question, you would say Stengel was on notice that if he disagreed, he better tell the attorney, no, no, no, don't add Babcock. He doesn't belong on there. As opposed to the argument of Mr. Conwell that, well, there was no reason for him to say anything. Correct, and in addition to that, Mr. Korber actually forwarded the e-mail to Mr. Stengel from Mr. Craig explaining why Babcock needed to be, and I can actually cite to that page. It's A4737 where the e-mail was forwarded to him explaining why Mr. Babcock needed to be added as an inventor. Anything further? No, Your Honor. I see my time is up. Thank you very much. We respectfully request that this be adjourned. We know your position. Thank you. Thank you very much. Mr. Conwell, we'll give you three minutes for rebuttal. Thank you, Your Honor. Let me quickly address the argument regarding Claim 2 with regard to whether the preferred embodiment argument. In fact, the trial judge never found that that preferred embodiment was part of Claim 2. That's opposing counsel's argument. The trial judge simply noted the issue with regard to the slotted bracket. So the trial judge never said that this is part of Claim 2. That's the first part. The second part is Claim 2, in fact, was never recited to, it was never meant to be, this gentle stop was referring to the dampening mechanism and the stop. It was not referring to any kind of a slotted bracket. There's nothing in Claim 2 addressing a slotted bracket or how that would have any effect on a gentle stop. In fact, that Claim 2 is referring to the dampening mechanism and the dampening argument that went on, which was a dampener, which was incorporated with an air shock that allowed it to come to a gentle stop. As far as the last argument, which we did go over with regard to the declaration, we're not asking for a unique and broad statement as far as all declarations. In fact, the particular facts in this case show that Peter Stengel was informed about his role in the inventorship. He was stating from the fact the only document in the record, the document that he actually got, was the power of attorney. His discussion with Royal Craig was addressing himself as an inventor. I don't believe that in this case we can attribute a lot of other arguments as far as what it meant to be an inventor on this patent. He was stating about himself. What do you do with the argument of Ms. Miller that the top of the pages, that even under his own literal declaration he did read, all say Korber et al.? We're not stating that he did not know that Korber was listed on the inventorship. We're stating that his declaration itself, to the extent that the trial judge is relying on that, said that he was an inventor. The testimony itself, the entire testimony, showed that the definition of inventorship that Peter Stengel understood was that contributing business aspects, business contribution, could make you an inventor on the patent. That was the entire testimony at trial, that this business contribution entitled Korber to be listed as an inventor. So we are not making the argument that Peter Stengel did not know that Korber was not listed. Korber himself was listed as an inventor on the patent. In fact, as we said, the provisional patent application listed Korber and Stengel in December of 2002. At some point, Peter and Korber had the discussion, and Korber himself informed Peter that contributing, because he was managing the business aspects... Is it your view that all of Korber's contributions to this entire set of events were limited to business-related things as opposed to design-related things like drawings and discussions and so forth? Absolutely, Your Honor. He did hire the engineer. The engineer was specifically hired with a statement of work demonstrating... That has to do with Babcock. I'm just trying to focus on your view of what Korber's involvement here was. I understand you to be saying all of his involvement had to do with business. None of it had to do with design at any point at all. Yes, Your Honor, that's true. And everything from September 30, 2002 and prior consisted of the boat hatch. I know the judge only referred to hatch here. The entire testimony was that Korber observed a boat hatch and, during their many conversations, suggested it to Peter Stengel. That was his only suggested contribution prior to that time. All right. Well, I think we have both sides' views carefully in mind, and appreciate the argument of both counsel. The appeal will be taken under advisement.